**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| In re:<br><br>ROBERTO ROBLES JR.,<br><br>Debtor. |

**NOT FOR PUBLICATION**

Case No. 22-10828 (MG)

## MEMORANDUM OPINION AND ORDER LIFTING THE AUTOMATIC STAY

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of 53-63 Partners, L.P. (the "Owner") seeking to lift the automatic stay imposed in Roberto Robles, Jr.'s (the "Debtor") bankruptcy case. ("Motion," ECF Doc. # 10.)  The Owner of residential real property known as 63 Hamilton Terrace, Apartment 37, New York, New York 10031 (the "Apartment"), requests entry of an order (1) lifting the automatic stay as to the Apartment; (2) permitting the Owner to proceed with the prosecution of the state court action in Civil Court, New York Country (the "Housing Court") captioned as *53-63 Partners, L.P. v. Roberto Robles, et al.*, Index No. L & T 306987/2021 (the "State Court Action"), and (3) granting additional relief as the Court deems equitable.  (Motion ¶ 1.)  Attached to the Motion are: the property deed ("Deed," ECF Doc. # 10-1); the initial lease and last renewal lease for premises (ECF Doc. # 10-2); a petition and notice of petition in the State Court Action (ECF Doc. # 10-3); a motion filed in the State Court Action by the Owner seeking to vacate an administrative stay in the State Court Action ("Motion to Vacate," ECF Doc. # 10-4); the Debtor's voluntary bankruptcy petition ("Bankruptcy Petition," ECF Doc. # 10-5); the Debtor's Schedule G listing a sublease agreement between him and Margaret Dunbar and Katherine Dunbar ("Schedule G," ECF Doc. # 10-6); the summons and complaint issued by the Owner against Margaret Dunbar and Katherine Dunbar (ECF Doc. # 10-7); and a third-party complaint asserted by

Margaret Dunbar and Katherine Dunbar against the Debtor ("Third-Party Complaint," ECF Doc. #

10-8).  Also included with the Motion is an affidavit from Mitchell Rothken ("Rothken Affidavit,"

ECF Doc. # 10 at 10), a manager for Beach Lane Management, Inc., the authorized and

registered managing agent employed by the Owner for the management of 63 Hamilton

Terrace, New York, New York 10031 (the "Building") and a memorandum of law in support of

the Motion ("Memorandum in Support," ECF Doc. # 10 at 14).

On July 13, 2022, the Chapter 7 trustee issued a report of no distribution noting that the

Debtor's bankruptcy case was pending for one month, that there were: (i) $203.04 in abandoned

assets; (ii) no exempt assets; and (iii) $54,649.00 in claims scheduled to be discharged without

payment.  (*See* Docket.)

The objection deadline was August 11, 2022, and there were no objections filed by that

date.  A hearing we held on August 16, 2022.  The Debtor made no appearance at the hearing.  For

the reasons explained below, the Motion is **GRANTED** and the automatic stay is **LIFTED.**

## I.    BACKGROUND

### A.    The Motion to Lift the Stay

The Owner owns the Building pursuant to the recorded Deed.  (Motion ¶ 3; *see also* Deed.)

The Owner and Mitchell Rothken assert the Debtor is not the tenant of the Apartment, and the

Debtor has no landlord-tenant relationship or privity with the Owner.  (Motion ¶ 4; Rothken Aff. ¶

4.)  The Owner states that it leased the Apartment to Margaret Dunbar, Catherine DiVicenzo, Denise

Ramirez, Katrina Feldcamp, and Katherine Dunbar pursuant to a lease agreement, dated July 10,

2014, for a one-year term commencing August 1, 2014, and expiring on July 31, 2015 (the

"Lease").  (ECF Doc. # 10-2).  The Lease was renewed several times.  (*Id.*)  The last renewed lease,

dated March 17, 2020, was between Margaret H. Dunbar and Katherine Dunbar (the "Tenants") and

the Owner for a one-year term commencing on August 1, 2020, and expiring on July 31, 2021.  (*Id.*)

The Tenants entered into a surrender agreement with the Owner on January 12, 2021. (*Id.* ¶ 5.)  The Tenants agreed to vacate and surrender the Apartment by January 31, 2021.  (*Id.*)  Indeed, the Tenants surrendered and vacated the Apartment on January 31, 2021.  (*Id.*)  However, the Owner discovered that they left an illegal sublessee—the Debtor—in the Apartment.  (*Id.*)  The Owner commenced the State Court Action, a licensee holdover proceeding, against the Debtor in Civil Court, New York County ("Housing Court").  (*Id.*)  The State Court Action seeks to evict the Debtor from the Apartment and contends that the Debtor was a licensee whose license to occupy the Apartment ended with the Tenants' vacatur and surrender on January 31, 2021.  (*Id.*)  The State Court Action is pending but has been stayed by this bankruptcy case.  (*Id.*)

On October 14, 2021, the Housing Court scheduled the proceeding for November 5, 2021.  (*Id.* ¶ 6.)  The Debtor submitted a COVID-19 Hardship Declaration, staying the Proceeding through January 15, 2022, pursuant to CEEPFA.  (*Id.*)  The Owner moved to vacate the CEEPFA stay on the grounds that the Debtor was not the tenant.  (*Id.*)  The Debtor filed his Bankruptcy Petition on June 21, 2022 (the "Petition Date"), the same date the Motion to Vacate was set to be heard.  (*Id.* ¶ 7.)  Due to the bankruptcy case, the Motion to Vacate was adjourned.  (*Id.*)

The Debtor subsequently filed his schedules and other papers in his bankruptcy case. (*Id.* ¶ 8.)  The Owner notes that in Schedule G, the Debtor lists a sublease agreement between him and the Tenants but does not list any lease or contract with the Owner.  (*Id.*)

On March 4, 2022, the Owner commenced an action against the Tenants in Supreme Court, New York County for use and occupancy, based upon their leaving an illegal subtenant in the Apartment.  (*Id.* ¶ 9.)  The Tenants filed the Third-Party Complaint against the Debtor

based on breach of their sublease agreement.  (*Id.*)  In the Third-Party Complaint, the Tenants state they entered into a sublease with the Debtor commencing on November 1, 2020, expiring on January 31, 2021, that their lease with the Owner was terminated when they surrendered the Apartment, and that the Debtor refused to vacate.  (*Id.*)

The Tenants never sought or obtained the consent of the Owner to their sublease with the Debtor, even though the Lease prohibited subletting without the Owner's prior written consent.  (*Id.* ¶ 10.)

The Owner asserts that the Debtor has no right to occupy the Apartment, that he has no lease, privity, or contractual relationship with the Owner.  (*Id.* ¶ 11.)  The Owner states that the Debtor entered into possession of the Apartment pursuant to an illegal sublease with the Tenants and any rights to occupy the Apartment terminated when the Tenants vacated and surrendered the Apartment on January 31, 2021.  (*Id.*)

The Owner asserts that there is cause for relief from the automatic stay and that balancing the harms supports lifting the stay.  (*Id.* ¶ 12.)  The Owner argues that lifting the stay is necessary to protect the Owner by avoiding additional damages and that no prejudice would result because the Motion bears no relationship to the purpose of the automatic stay.  (*Id.* ¶¶ 13–14.)  The Owner and Mitchell Rothken, both note that the Debtor continues to occupy the Apartment without paying rent for use and occupancy.  (*Id.* ¶ 12; Rothken Aff. ¶ 11.)

**B.     The Owner's Arguments**

The Owner argues that the automatic stay should be lifted because six of the *Sonnax* Factors (defined below) apply, and that the stay should be vacated pursuant to section 362(d)(2).  (Motion at 17–18.)

1.     The *Sonnax* Factors Applied by the Owner

The Owner argues that the following six *Sonnax* Factors apply:

- Whether relief would result in a partial or complete resolution of the issues;
- The lack of any connection with or interference with the bankruptcy case;
- Whether the other tribunal involves the Debtor as a fiduciary;
- Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
- Whether the parties are ready for trial in the other proceeding, and;
- The impact of the stay on the parties and the balance of harms.

(*Id.* at 17.)

The Owner argues that the Debtor has no colorable claim for his continued occupancy of the Apartment because the Debtor has (i) no lease with the Owner, (ii) landlord-tenant relationship, or (iii) privity with the Owner because the Debtor entered the Apartment as an unauthorized sublessee. (*Id.* at 18.)

The Owner notes that the only executory contract alleged by the Debtor is his sublease with the Tenants. (*Id.*) The Owner argues that the Debtor's license to occupy the Apartment, if any, was terminated when the Tenants vacated and surrendered the Apartment. (*Id.*) The Owner contends that the Debtor's occupancy of the Apartment has no connection with his bankruptcy case because he has no landlord-tenant relationship with the Owner, and no contractual obligation to pay rent. (*Id.*) Therefore, there is nothing to discharge with respect to the Owner. (*Id.*)

The Owner asserts that the Housing Court is a specialized tribunal with the expertise to determine the Debtor's status and his right, if any, to occupy the premises. (*Id.*) The Owner also contends that the balancing of harms favors vacating the stay because the Owner has been harmed by the Debtor's continued occupation of the Apartment without any rental payments. (*Id.*)

### 2.    The Stay Should be Vacated Pursuant to 362(d)(2)

The Owner next asserts that there are separate and independent grounds to vacate the automatic stay under section 362(d)(2) of the Bankruptcy Code. (*Id.*) The Owner argues that the

stay should be vacated because the Debtor does not have equity in the Apartment and the Apartment is not necessary to an effective reorganization. (*Id.*)

The Owner notes that a Chapter 7 case does not provide the Debtor with an opportunity to conduct a reorganization, because reorganization is not implicated by a Chapter 7. (*Id.* at 19.) Therefore, the only remaining issue is whether the Debtor has equity in the property. (*Id.*) The Owner asserts that the Debtor does not have any equity in the property because he has no lease or landlord-tenant relationship with the Owner. (*Id.*)

## II.    <u>LEGAL STANDARD</u>

Section 362(a)(1) of the Bankruptcy Code imposes an automatic stay of "the commencement or continuation" of all litigation against a debtor upon the debtor's filing of a bankruptcy petition. *See* 11 U.S.C. § 362(a)(1); *In re Project Orange Assocs., LLC*, 432 B.R. 89, 101 (Bankr. S.D.N.Y. 2010).

Under section 362(d), a party in interest can seek relief from the automatic stay. Section 362(d), in relevant part, provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d).

To prevail on a motion to lift the automatic stay under section 362(d), a movant must establish its *prima facie* case that there is cause to lift the stay. "Neither section 362(d)(1) nor the

legislative history" related thereto defines what constitutes "cause" for relief from the automatic stay. *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). "'Cause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *Project Orange*, 432 B.R. at 103 (quoting *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004)) (internal citation omitted). The decision whether to grant relief from the automatic stay falls within the discretion of the bankruptcy court. *Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship* (*In re Burger Boys, Inc.*), 183 B.R. 682, 687–688 (S.D.N.Y. 1994).

Courts in the Second Circuit consider the twelve factors established in the Court of Appeals decision in *Sonnax Industries, Inc. v. Tri-Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990), to determine, on a case-by-case basis, whether relief from the automatic stay is appropriate. *See, e.g., In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 138 (S.D.N.Y. 2010*)*, *aff'd sub nom Suncal Cmtys. I LLC v. Lehman Commercial Paper*, *Inc.*, 402 F. App'x 634 (2d Cir. 2010) ("*Sonnax* . . . is routinely referenced as the leading relief from stay precedent in this Circuit."). In determining cause to lift the stay, courts consider the following factors (the "*Sonnax* Factors*"):

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interest of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's succession to other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286.

Not all of the *Sonnax* factors are relevant in every case. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)). The Court need not assign equal weight to each factor. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994) (citing *In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992)).

## III.   <u>DISCUSSION</u>

### A.   The *Sonnax* Factors Favor Lifting the Stay

The applicable *Sonnax* Factors weigh in favor of lifting the automatic stay.

First, *Sonnax* Factor 1—whether relief would result in a partial or complete resolution of the issues—favors lifting the stay. Here, the eviction of the Debtor is the sole issue in the State Court Action. (Motion ¶ 5.) Lifting the stay would permit the Owner to pursue that eviction and would fully resolve the State Court Action.

Second, *Sonnax* Factor 2—the lack of any connection with or interference with the bankruptcy case—favors lifting the stay. Here, it does not appear that permitting the stay to be lifted would impact this case given that (i) the Debtor does not have a lease or contract with the Owner and (ii) any interest the Debtor had in the Apartment terminated when the Tenants vacated the Apartment on January 31, 2022. (*Id.*¶¶ 4, 9–11.)

Third, *Sonnax* Factor 3—whether the other tribunal involves the Debtor as a fiduciary— favors lifting the stay. Here, the Debtor has a fiduciary relationship with the Owner as the Debtor would be required to pay any rent obligations that are owed to the Owner, assuming the Debtor has any interest in the Apartment and a landlord-tenant relationship existed. Both the Owner and

Mitchell Rothken assert that the Debtor continues to occupy the Apartment without paying any rental obligations.  (*Id.* ¶ 12; Rothken Affidavit ¶ 11.)

Fourth, *Sonnax* Factor 4—whether a specialized tribunal with the necessary expertise has been established to hear the cause of action—is neutral towards lifting the automatic stay.  Here, the Owner asserts that the Housing Court is a specialized tribunal with the expertise to determine the Debtor's right, if any, to occupy the Apartment.  (Motion at 18.)  While the Housing Court handles these matters more often, the Bankruptcy Court is equally positioned to make such a determination.

Fifth, *Sonnax* Factor 11—whether the parties are ready for trial in the other proceeding—is neutral towards lifting the automatic stay.  Even though the Owner filed his Motion to Vacate, that is not indicative of the parties being ready for a trial, but merely that a hearing was set to be held that had to be adjourned due to the imposition of the automatic stay.  (*Id.* ¶ 7.)

Sixth, *Sonnax* Factor 12—the impact of the stay on the parties and the balance of harms— overwhelmingly favors lifting the automatic stay.  The Debtor has been living, possibly illegally, in the Apartment without paying any rental obligations since at least January 31, 2021.  (*Id.* ¶¶ 5, 12.)  This period is more than a year prior to the Petition Date of June 23, 2022.  The Owner has been seriously harmed by this situation and would continue to be harmed were the Debtor permitted to continue living in the Apartment rent free.

Of course, not all *Sonnax* Factor will be relevant in every case.  *See In re Bogdanovich*, 292 F.3d at 110.  Additionally, the Court need not assign equal weight to each factor.  *In re Keene Corp.* 171 B.R. at 183.  Here, the above *Sonnax* Factors implicated by the Motion weigh in favor of lifting the stay or, at worst, are neutral towards lifting the stay.  Therefore, the Owner has provided sufficient cause to lift the stay.

**B.      There is Cause to Lift the Stay Because the Debtor Lacks Equity in the Apartment and It Is Not Necessary for a Reorganization**

Section 362(d)(2) of the Bankruptcy Code permits a moving party to lift the stay of an act against property provided the debtor lacks equity in the property and the property is unnecessary for reorganization.  11 U.S.C. § 362(d)(2).  Here, there is sufficient cause to lift the automatic stay because the Debtor does not have equity in the Apartment, and the Apartment is unnecessary for a successful reorganization.  (Motion at 18–19.)

First, a Chapter 7 case is not one in which a debtor would reorganize.  Moreover, the Chapter 7 trustee's report of no distribution, filed on July 13, 2022 (*see* Docket), foreclosed any form of a successful reorganization were one to occur.  The report of no distribution signifies that this case is coming to an end and that there is little need for a stay to remain in place.

Second, the Debtor lacks privity of contract with the Owner and, any interest in property the Debtor had in the Apartment terminated when the Tenants vacated the Apartment on January 31, 2021.  (Motion ¶ 11.)

In light of the above, the Owner has shown that cause exists to lift the automatic stay under section 362(d)(2) of the Bankruptcy Code.

### IV.      <u>CONCLUSION</u>

For the reasons explained above, the Motion is **GRANTED** and the automatic stay is **LIFTED.**

**IT IS SO ORDERED.**

Dated:      August 16, 2022
                New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge

10